5-24-1010 in the matter of the Edward E. Tiedemann Trust. Counsel for the appellant, you may proceed if you're ready and please identify yourself for the record. My name is Mike Brizotti and I represent the appellant in this matter. And this case presents a straightforward question. Can Section 2019 of the Illinois Probate Act, which by its expressed terms restricts certain debt, the payment of certain debt, from assets in a decedent's estate, can that section be extended as it was by the trial court to also restrict the payment of debt from non-estate assets? And our position, as explained in our briefs, is that extending the statute to include a restriction on the payment of debt from assets outside of an estate, and here specifically from trust assets, is not appropriate. And this is because not only of the expressed language within Section 2019, but also in the nearly 60 years since Section 2019 was enacted, there is not a single case that either side has been able to find, I don't believe there is a single case, that has extended that section to restrict the payment of debt from anything other than assets in a decedent's estate. Now, despite that language and despite that history, the circuit court held for what appears to be the first time that Section 2019 of the Probate Act can be extended to restrict the payment of debt from assets outside of a decedent's estate, and here specifically to restrict the payment of debt from assets that are in a trust. In fact, this extension of Section 2019 provided the sole legal basis for the court's ruling that the trustee should not do what the trust says, which is to pay the settler's debts with assets in the trust. Your opinion, counsel, if the trust was formed in 2014, when was the, I think it was referred to as the rent-loan property? Yes. If I'm pronouncing that correctly, when was that acquired again, the date? I believe that was purchased in 2022. All right. Thank you. Yep. And so our position is that the circuit court's reliance on Rule 2019 to restrict the payment of that debt was an error, and so what is Section 2019 of the Probate Act? Well, Section 2019 was enacted by the legislature nearly 60 years ago to deal with an issue specific to probate, the doctrine of exoneration. And what that doctrine said was that without instruction to the contrary, a decedent's debts would be paid out of their personal estate. And around that time, the Illinois legislature and other legislatures around the country began to conclude that by requiring debt to be paid without instruction one way or the other would not serve the purpose of a decedent's intent, that if a decedent was silent on the issue, they probably assumed that the debt would not be paid. And so the Illinois legislature enacted Section 2019, and it was in derogation of this common law rule. And Section 2019 says that no matter how you inherit property, you cannot have that property paid with assets in an estate unless it is expressly provided for in the will. And as this Court knows, statutes that operate in derogation to the common law, such as Section 2019, have to be construed strictly, and they cannot be extended beyond what the words of the statute say. And so what are those important words here in Section 2019? Well, in relevant part, it says that, as I just said, regardless of how you come to inherit property, so if you get it through a will, through a trust, through a right of survivorship, however you come to inherit the property, one who receives property takes it subject to any encumbrances that exist and is not entitled to have that indebtedness paid from, quote, the real or personal estate of the decedent, end quote. So by its clear terms, it only applies to a repayment from the real or personal estate of a decedent. Because of this, it does not extend to the repayment of debt from assets outside of a decedent's estate. And trust assets are outside of a decedent's estate. In fact, trusts and estates are clearly different things. And they're treated differently under Illinois law. Trusts are governed by the Trust Code. States are governed by the Probate Act. Trusts are generally controlled by a trust document. States are generally controlled by a will. Trusts are distinct legal entities that can hold and manage properties, whereas wills merely direct the administration of one's probate estate, which is overseen by courts. And trusts are different from estates and wills in that they fulfill a number of roles that estates cannot, such as being active during a settler's life. And also, you agree that they work in simpatico with each other, correct? There's a pour-over will here, and then the provisions of the trust then govern, correct? And then, I'm sorry, the provisions... And the provisions of the trust then would govern whatever is poured over, correct? Obviously, this isn't poured over. It is a pour-over will. Now, importantly for this case, nothing has been poured over yet. So the estate is still being administered, and the assets that are in the estate now, or I'm sorry, in the trust now, were never in the estate. There's three properties that were put in the trust during the settler's life. And at this point, nothing has poured over. So trusts and estates do work together, but they're different. And they're treated differently by the law. And it's because of this different treatment, even though they do work together, that there would be far-reaching consequences if Section 2019 of the Probate Act were to be extended to also include a prohibition on the payment of debt from trust assets. In a way, it would place the Probate Act in a position superior to the Trust Act. Section 2019 says that debt can't be paid out of a decedent's real or personal estate. If 2019 is extended to apply to trusts, then where else in the Probate Act does it say real or personal estate? And if 2019 is extended, does that mean everywhere where the Probate Act talks about the real or personal estate, it also applies to trusts? It would undermine the trust code. And as this Court knows, the legislature recently updated the trust code, just in 2020. And the legislature did not include in the trust code a restriction similar to 2019 with respect to assets in a trust. If it believed that there was an issue there, it would have done so, but it did not. Extending 2019 to also apply to trusts, meaning if we're going to say that trust assets cannot be used to pay debt when a trust specifically says, pay my debt, would also undermine countless trusts that have been established. Without the knowledge of the settler that an article, a section of the Probate Act, which does not talk about trusts, might apply to how their property is going to be distributed. And for settlers who have died, that would be irreversible. Simply put, and as we talked throughout our briefs, there's just no legal basis to conclude that Section 2019 of the Probate Act, which by its expressed terms restricts the payment of debt from an estate, can be used to restrict the payment of debt from non-estate assets or a trust. And here below, the trial court ruled only on the fact that it believes Section 2019 applied to the payment of debt from trust assets. And based on that conclusion, it held that the trustee would not be required, or couldn't even, pay the settler's debt, a debt that is undisputed to be the settler's. The trial court found that it was the settler's debt, and the respondents below did not dispute that. And there was no dispute that the trust said, the settler must pay my debts. And so the only basis for the court finding that the trustee should not do what the trust said, was its conclusion that Section 2019 of the Probate Act restricted that payment. But that payment would have been made from trust assets. And 2019, in order for it to restrict that payment, needs to be extended by this court to also include trusts. And for all the reasons that we just talked about, that would have far-reaching consequences, and just based on the language of the section itself, is not appropriate. That's all I have. And our standard of review here, counsel, is? That's de novo, because we have undisputed facts. All right. And then, there was a provision in the trust, though, that included that the appellant would, in fact, be responsible for mortgage on the marital property. Is that correct? So there's a provision in the trust that says, if the marital property that they're living in at the time of the settler's death is in the trust, then she can continue to live there rent-free if she made those payments. The marital residence was not in the trust at the time of his death. All right. Thank you. Thank you, Joe. All right. Thank you, Cassidy, for giving time for rebuttal. Thank you. Appellee, you may proceed. Please identify yourself for the record when you get ready.  Good morning. Justice, opposing counsel, Andrew Jarmer of Sorley, Northrop, on behalf of appellees Brent and Kevin Tiedemann. This matter comes before you today under de novo review to determine whether the appellant must take her interest or the deceased's interest to the rent share of the property, subject to its encumbrances, and without a discharge from the trust. Now, the answer to this question is yes, and for two reasons. The first being that section 20-19 of the Illinois Probate Act was enacted by the Illinois General Assembly to abolish the common law exoneration doctrine in the state of Illinois. And secondly, when looking to the last written testament of Edward E. Tiedemann, as well as the trust dated 2014... When it applies to probate assets, does it also apply to non-probate assets? That is what we're asking for today, Your Honor, based upon... If your question is, does the text of the statute apply to non-probate assets, no. But we believe that when looking to the nature of this statute, and what the intent of the Illinois General Assembly was in adopting this statute, that that extension should be made by this Court here today. And the second reason why appellees are successful is that when looking to the last will and testament, as well as this trust, there's no manifestation of intent by Edward E. Tiedemann for this trust to be responsible for the mortgage on the promissory note. And for those reasons, we've been asking for an order affirming the Supreme Court's opinion. Now, Justice Schall has said that this was a de novo review, and appellant said that it was, and we agree with that. And it's not just because we have undisputed facts, but it's because this case involves a question of law, in addition to the interpretation of a trust. Now, when looking to what the common law is on a ration doctrine, as appellant discussed, this is a common law doctrine that originated from Great Britain, and that basically what it provided was that a person could seek a discharge from a decedent's estate if they received encumbered real estate. However, there was frustration in the mid-60s. The Illinois General Assembly, as well as real estate practitioners and commentators, discussed that this doctrine was a frustration of the decedent's intent, that if the decedent intended for a discharge of encumbered real estate, he would specifically say that in his estate planning documents. And so, by looking at Section 20-19, the analysis when applying this statute is that if there's an encumbered real estate that is gifted through either being a will, a land trust, or a joint tenancy with right of survivorship, then it's presumed in Illinois law that encumbrance follows with the transfer. That's the presumption. Now, then, the second part of the analysis is looking to, which would be the same whether Section 20-19 applies or not, you look to the decedent's estate planning instruments. Is there a manifestation of intent? Now, in the First District Opinion 2011, In re Matthews, that cited in Apley's brief, there's a discussion of what language is needed. And in that case, the First District clarified that you don't need to make specific reference to the statute. And that's not our position here today, that there needs to be something in the estate planning document stating that I intend for Section 20-19 to apply to this property, or to apply generally, or to not apply. That's not the language that's required. But what Matthews says is that there needs to be some, quote, clear direction, end quote, for Section 20-19 to not apply. And the same principle would be that when construed in terms of a trust, that there needs to be some type of direction for the trust to be liable for the encumbrances relating to the ranch or the property. And when looking to the case Griffin v. Gold, which is cited in our opinion, it's the same analysis as the 1975 case. Griffin v. Gold, In re. Matthews, and In re. State of Light are three cases that we cite to. And they're all discussing Section 20-19. They're all analogous in that all three cases involve a beneficiary who had paid off delinquent real estate taxes, and then had sought a discharge from the estate. Now, in all three cases, the appellate court, whether it was the First District or the Third District, reversed or agreed in that the encumbrance was not subject to a discharge, that Section 20-19 applied, and that when looking to the deceased's estate planning instruments, there was no manifestation of intent for his estate to be liable. And the same analysis would be applicable when looking to the terms of a trust. When this Court decided Mushi v. Stobbs in 1996, this Court's primary duty in construing a trust is to effectuate the intent of the deceit. And that in doing so, you look at what the deceit said, not what he did not say or what he could have said. You look at the plain and ordinary meanings of the trust document. So even notwithstanding Section 20-19's applicability in this case, when looking to the trust of Edward E. Tiedemann dated January 30, 2014, there are three specific articles that are of relevance in this case. The first being Article 3. Article 3 is talking about the distribution of income and principle of the trust during the settler's lifetime, but when he's no longer having the capacity to act as the trustee. In Article 3, it says that the trust estate would be liable for the parties, for he and the appellant's marital residence, for his share of the mortgage. For his share, not the entire share, but for his share of the monthly mortgage for, and it's not the rent share of the property, but a specific property. This is showing that the decedent knew how to manifest intent for a trust to be liable for a mortgage. That he knew how to do that. He knew that in Article 3. Now, Article 4 goes on to discuss the distribution of principle and income of the trust after his passing. When he is passing, the appellant is acting as trustee. Article 4 says that the appellant has the right to live in a certain marital residence, but so long as she is responsible for the monthly mortgage payments. Again, this is not talking about the rent share of the property, but is again showing that the decedent knew how to manifest... I think the Appellant's Counsel said that the marital property wasn't in the trust. Is that correct? Did I hear that correctly? That's correct. And that is correct, Your Honor. It is not in the trust. But there was guidance in the trust, though, regarding how to address the mortgage for that property that was not subject to the trust. That is correct, Your Honor. All right. Thank you. And so, and then Article 4 goes on to say in 4.3, it's the only reference to the rent share of the property in this trust. And it doesn't... I shouldn't say... It's speaking to joint property owned and joint tenancy with right of survivorship. It doesn't make specific reference to the rent share of the property, but there's no discussion and there's no reference to payment or discharge of any encumbrances relating to property owned in this manner. This trust was executed on January 30, 2014. The rent share of the property was purchased on June 30, 2022. This is an eight-year period that it seemed did not pass until September 7, 2023. Ample amount of time for this trust to be amended, specifically either Article 4.3 or any other additional article to make specific reference to a discharge for the rent share of the property, but there was not, Your Honors. And that's what's required, either under Section 20-19 or under just a general interpretation of this trust agreement. The only article that the appellant relies upon is Article 10 of the trust. Article 10 is a boilerplate provision. Article 10 just states that it directs the executor to pay for all of my just debts or the decedent's just debts, including the expenses of my last illness and funeral, all expenses of administration of property wherever situated, passing under my will or this instrument or otherwise, and all estate, inheritance, transfer, and succession taxes, which become due by reason of my death. This is just general direction for an executor or the trustee to perform the obligations that the trustee has to do under the trust code. It's not speaking to a discharge. It's not saying that you are also going to be using this trust to pay off an encumbrance for the rancher of the property or for any of the properties on joint tenancy for survivorship. And that's exactly the analysis that Section 20-19 asks the court to do or just under a general interpretation of the trust. Appellants are unable to cite to any Illinois case law that says that Section 20-19 does not apply to a trust, any case law saying that a trustee or a beneficiary or someone that's a devisee of an encumbered real estate can go to a trust and seek a discharge. And we are not asking for an undermining of the trust code. There was discussion on appellants arguing about that. A decision favoring appellee would be an undermining of the trust code. And we don't believe that that's that a decision favoring an appellee would do that, Your Honors. Rather, it would strengthen the trust code. It would strengthen the probate code. Because a decision favoring appellant would rather lead to inconsistencies. As Mr. Scholar referenced, this is a pour-over will. And while appellant is correct that nothing has poured over, while it's not on the record, we believe that that is due to this pending litigation that the will is currently being probated in Piatt County 24 PR 9. The last movement on that was, it's not on the record, but it was in September of 2023 following the court appearances here in this matter at the trial court level. Nothing has poured over yet, but the trust or the will directs for assets from the will to be poured over into the trust and to become part of the trust estate. The decedent, as many others using estate planning tools such as this, rely on these documents to work together just to show the reference that they're interwoven in each other and that it makes sense for specifically in this context for section 20-19 to be extended this trust. So this was another extension of the decedent's estate planning instruments. This is not just a mere general trust. It was a revocable will revocable until the decedent's death. And as the appellant has conceded both in the reply brief and here today, no matter how you inherit property, section 20-19 would require that encumbrance follow that transfer of property. And so we are asking for this court to extend 20-19 here in this manner and for a decision favoring appellee. Any further questions, Justice Moore, or aggressive show? No questions. Thank you, counsel. Thank you very much. Allen, rebuttal. Thank you, Your Honor. Before I get too far into this, I want to make a point about Article 4 because he said it talked about the marital residence. But Article 4 is very clear that it only talks about marital residence if it, quote, is or becomes part of the trust estate. So Article 4 doesn't come into play here at all. And the same reason Article 3 doesn't come into play, it also talks about property in the trust. And the only property in the trust here is the three properties that had been in the trust prior. Well, and I think that goes to the overall picture. Yeah. Which is, that article is in a trust. And the foundation of all of their arguments is that Section 2019 applies to trusts. And so, Right. Well, I understand. And say, we're trying to discern the intent of the settler of the trust by looking at the trust and we see this provision here by which he has directed payment of a debt that instructs us on how to understand the intent of this trust. Sure. So I think, first of all, the trust was not written with the thought that 2019 applied. Because there's never been a holding that 2019 applies. So, that Article 4 basically says, if our marital residence ends up in the trust, my wife can continue living there. And she doesn't have to pay rent. But, to be fair to the trust, she's going to have to pay everything to upkeep the house, to pay on the mortgage while she lives there. And I think that's a pretty standard provision in trusts. You know, it's not a 2019 provision. It's, the mortgage is part of it. But doesn't that show that there was some thought that property, other properties would go in the trust? And doesn't that show us, the court, some forethought on behalf of the settler? I mean, doesn't that show intent? Well, I think it shows intent that if his wife was still living on the property, he didn't want the trust to be burdened. But, 2019 talks about properties that are given to people. This Article 4 talks about a property that's remaining in the trust. And the intent of Article 4, it's a pretty standard provision in a lot of trusts, I think, is to not burden the trust, to give the surviving spouse the ability to live in a property, but not burden the trust with the cost of that. 20, 2019, like I said, deals with properties that are devised to someone, that are given to someone. I would assume that the appellee would agree that a promissory note burdens the trust, though. Correct? That a promissory note would burden the trust if it was responsible for that. Sure. Sure, it would. And that gets back to, you know, what we were talking about, the settler's intent. And counsel said we would have to look at what the settler said. Well, the settler says in Article 10, pay all of my debts. Pay all of my just debts. And the promissory note is an undisputed debt of the settler. The court found that. The respondents don't disagree. Article 4 of the trust says the distributions in Article 4 will only happen after the settler, after the trustee has done what Article 10 requires, which is pay all the debts. So at the end of the day, all of these arguments, whether or not there's intent here, are based on a thought that 2019 might apply to a trust. And 2019 simply does not apply to trusts. And you know, it's a counsel said that the issue was whether the property was encumbered. That's not the issue. The issue here is straightforward. To find that the trustee should not pay the debt, the sole basis the trial court used was the application of 2019. And if 2019 is extended, it will have far-reaching consequences. And we don't just look at the intent of the legislature. This is a statute that was enacted in derogation of the common law. You look at the words. That's what the Supreme Court has said over and over again. And the words here, as counsel admitted, are very clear. 2019 applies only to the payment of debt from assets in the state. Any further questions? Thank you. We will take this matter under Dysagnostic ruling in due course.